IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

AUG 9 1993

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

MORRIS LEWIS,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )   CA NO. 91-D-1463-E
                                 )
ALABAMA DEPARTMENT OF PUBLIC     )
SAFETY, ET AL.,                  )
                                 )
        Defendants.              )

## MEMORANDUM OPINION

### FACTS

This case involves a black wrecker driver who owns a wrecker business in the Opelika/Auburn area.  The State of Alabama requires that each trooper post maintain a list of wrecker operators which troopers call on a rotating basis when the owner of a motor vehicle is unable to make a decision about a wrecker service to tow his vehicle.  The wrecker operators are private companies with no affiliation with the Alabama Department of Public Safety.  The Department of Public Safety has adopted rules and regulations the requirements of which wrecker operators must meet in order to be included on the list. One of the regulations adopted by the Department is the requirement that the operator not be convicted of a felony or misdemeanor involving force, violence or moral turpitude (Pl. Ex. #5 at 5).

In 1990 the plaintiff applied with the Alabama Department of Public Safety to be placed on the list.  The plaintiff's application was denied due to his criminal record.  The plaintiff had been convicted of five worthless check violations which have

35

The plaintiff alleges that the reason for the denial was his race and has alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1983, and the Equal Protection Clause of the United States Constitution.

## TITLE VII

The plaintiff, contends that the regulations are in conflict with Title VII of the Civil Rights Act of 1964, in that the regulation as applied discriminates against the plaintiff and others similarly situated, on the basis of race and color. Title VII generally prohibits employment discrimination on the basis of race, color, religion, sex or national origin. In support of the allegations of racial discrimination, the plaintiff cites the court to statistics relating to the percentage of black misdemeanor convictions compared to white misdemeanor convictions in Lee County, Alabama. These statistics are inconclusive in proving de facto discrimination because there are to many unknown factors for the statistics to be accurate. The plaintiff admits that out of a total of 2,055 total misdemeanor convictions in Lee County the racial makeup of the offenders was unknown in 1,366 of the cases.(Tr. at 27). This means that the racial breakout of 55 percent of the data used for the statistical base is unknown thus making the given statistics worthless.

Therefore, the court finds no basis for which to base a disparate impact case under Title VII.

## EQUAL PROTECTION

The plaintiff next contends that the regulations violate his right to equal protection of the law pursuant to the Fourteenth

Amendment to the Constitution of the United States.  Under the 1987 Towing and Recovery Services Rules and Regulations at issue, no owner or operator shall be on the rotation list who has been convicted of a felony involving grand larceny, theft of property, etc. or a misdemeanor involving either force, violence or *moral turpitude*." (Plaintiffs exhibit #3 at 5).  The question before the court is whether discrimination against a class of misdemeanants is permissible under the Equal Protection Clause of the Fourteenth Amendment.

## SUSPECT CLASS

The plaintiff, has attempted to invoke the compelling state interest test by urging the court that the regulations have a disproportionate racial impact and thus are discriminatory the on basis of race.  As stated above, the plaintiff has failed to produce statistical evidence which supports a claim that this regulation discriminates against blacks. Moreover, the court finds that a classification based on one's criminal record is not a "suspect classification" and therefore this group does not require the strict scrutiny given a "suspect classification."  The court must therefore analyze the regulation prohibiting the licensing of convicted misdemeanant in light of the rational basis test.

## RATIONAL BASIS TEST

The Supreme Court has defined the rational basis test thusly,: "... the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation (here, regulations), so that all persons similarly circumstanced shall be

treated alike."   F.S. Royster Guano Co. v. Virginia, 253 U.S. 412,415 (1920).   But, simply discerning any regulatory reason, however plausible, will not serve to satisfy the rational basis requirement.  The relevant inquiry should more properly focus upon whether the means utilized to carry out a regulatory purpose substantially furthers that end. See United State Dept. of Agri.v. Moreno, 413 U.S. 528 (1973); Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 (1972); Reed v. Reed, 404 U.S. 71; Butts v. Nichols, 381 F. Supp. 573 (U.S.D.C. Iowa 1974).

The defendants contend that the purpose of the regulation is "to protect the property of the people that's [sic] injured in accidents in the State of Alabama, the only way that we know how to predict a persons' honesty is based on his past actions" (Jones Test. at 156). In essence, the defendants contend that a convicted misdemeanant cannot be relied on to be honest and trustworthy.

The validity of this purpose is not before the court nor is the public policy of the State of Alabama, in this regard, an appropriate inquiry for the court.  While the determination of regulatory interests are within the reviewable discretion of the regulatory agency, the means of implementing those goals, however, are the proper subject of judicial review and in this case these regulations violates the Equal Protection Clause and is therefore impermissible.

The court finds this regulation to be unconstitutional and violative of the Equal Protection clause for two reasons.(1) The regulation has an across the board prohibition against placing people on the rotation list who are misdemeanant who have been

convicted of crimes against "moral turpitude" with no tailoring in an effort to conform to the legitimate state interest of denying the licensing of dishonest and untrustworthy applicants. As a result, the regulation is both over and under inclusive. (2) the regulation is enforced differently against people who apply with convictions and those who are convicted of such a misdemeanor or even a felony after being placed on the list. The defendants admit that they do not routinely check records of persons who had been placed on the list. As a result, when the policy was changed in 1992, some 25-30 drivers were found to have criminal convictions. (Jones test. at 151). For the reasons set out below, the court finds that this distinction among the members of the class of offenders is irrational, regardless of the importance of the public safety consideration underlying the regulation, or the relevance of prior convictions to fitness.

(1) Over and Under Inclusive-

There is no doubt that the State can logically prohibit and refuse to license a wrecker driver where the misdemeanor would directly reflect on the qualifications of the job. However, an across the board prohibition against the licensing of misdemeanant who have been convicted of a crime against "moral turpitude",given the types of crimes considered to include moral turpitude, provides no tailoring to conform the regulations to meet the legitimate state interest. Without a more precise relationship of the means utilized by the regulations to achieve this end, the regulations clearly violate an equal protection analysis. The exclusion or inclusion of properly identified members in a class is 'necessary

to achieve the articulate state goal.' Kramer v Union Free District
No. 15, 395 U.S. 621 (1969).

Moral turpitude has been defined by the Supreme Court of
Alabama as signifying an inherent quality of baseness, vileness and
depravity in the private and social duties which a man owes to his
fellowman or to society in general. McElroy's Alabama Evidence 377
(1991). By enacting a blanket prohibition on all misdemeanant who
have committed a crime against moral turpitude, a clearly
anomalous, ambiguous and enigmatic situation results. For example,
persons convicted of adultery would be rejected from the rotation
list regardless of the fact that this crime is not related to the
job. In contrast, an individual convicted of multiple driving
while intoxicated offenses, reckless driving, speeding or stop sign
offenses would not be precluded for the list because these are not
considered to be crimes against moral turpitude; yet they are *more*
directly related to the job than the proceeding offense.(See
Defendant's Ex. 2 p.8).

Because of the lack of narrowing the statue is both over and
under inclusive; citizens who clearly could be trusted to tow a
vehicle containing personal property are denied a license, while a
misdemeanant convicted of crime not involving moral turpitude but
directly related to safety of the public are not disqualified. This
regulation gives no consideration to the nature, circumstances and
seriousness of the crime in relation to the job sought, the time
elapsing since the conviction, or the degree of the misdemeanant's
rehabilitation.

In this case the plaintiff was convicted on five worthless

check violations. Worthless check violations have been held to be a crime against moral turpitude. (Plaintiff test. at 135). Because these are crimes against moral turpitude, the plaintiff was automatically barred from being placed on the rotation list with out being given the opportunity to explain the circumstances surrounding his convictions. The same result would occur had he only been convicted of one worthless check such as Billy Glass who was rejected from the list for one worthless check violation (Pl. Ex. 19).[1] The circumstances surrounding the conviction should be taken into account before an automatic bar is issued. The convictions themselves are prima facie evidence of dishonesty and untrustworthiness. However, the labeling of crimes by the Supreme Court of Alabama as against moral turpitude has not been a consistent one. The presumption that because a person committed a crime which has held to be one against moral turpitude to mean he or she is unreliable and untrustworthy as a wrecker driver should be a rebuttable one to prevent it from being unconstitutional.[2]

The regulation suffers from the defect of irrationality because the class defined – misdemeanors involving moral turpitude- is insuffiecienly related to the articulated purpose of the regulation. As a result, a totally irrational and inconsistent scheme is created which violates the Equal Protection Clause.

---

[1]The court recognizes that the more convictions the less credible is the justification.

[2]The fact that this creates an irrebuttable presumption is arguably a violation of due process. Since the court has declared that the regulation violates the Equal Protection Clause it does not reach the issue of due process.

(2) Unequal application-

The defendant admits that once an applicant is placed on the list, the troopers do not make a routine check to determine whether he thereafter has been convicted of the prohibiting crimes. This allows someone who committed armed robbery within a few days of being placed on the list or someone who committed a crime but was not convicted until after being placed on the list, would remain on the list.[3] However, one who had been convicted of these offenses before applying would be automatically barred from the list.

In Miller v. Carter, 547 F.2d 1314 (7th Cir. 1977), the court dealt with a similar issue. In that case the plaintiff was denied a chauffeur's license because he had been convicted of a felony 10

---

[3]. The regulation in this case specifies standards of conduct required of its wrecker drivers and sets penalties for violations of those standards. Section VII PENALTIES describes, as conduct which shall lead to the elimination of the operator from the rotation log. According to this "violation of these regulations shall be cause for the elimination .... [s]aid removal shall be for a period of not less than ten days nor more that 1 year." No where in the penalty section do the regulations say that prohibited conduct leads to automatic removal from the list. Based on the penalty section, a licensee would only be barred for a maximum of one year if he or she were to violate Section V, I. However, the plaintiff in this case is absolutely barred from being *placed* on the list. The court finds no justification for the difference in treatment.
The court further notes that while this plaintiff does not have standing to challenge the vagueness of the regulation as they apply to one who is already licensed, the regulations are unclear as to what action will be taken against a licensee once is determined that he or she has been convicted of one of the crimes under discussion. The language of Section V,i states that:
   No owner or operator shall be on the list who has been convicted of a felony involving grand larceny, theft of property, ect. or a misdemeanor or felony involving either force, violence or moral turpitude.
This language if read alone appears to automatically eliminate the driver from the rotation list. However, if read in context with the entire regulations, a violation of this section would only lead to suspension of up to a year. This ambiguity only adds to the problems involved in enforcing the regulation.

years before he had applied. The issue was whether the ordinance that barred a person convicted of certain offense from obtaining a public chauffeur's license violated the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.  The court found that the fact that the ordinance treated applicants and licenses differently in the application of the ordinance violated the doctrine of equal protection of the law.  The defendants attempted to distinguish the two classes by saying that those who committed an offense after the fact had a proven track record before the commission of the crime to balance against the felony in evaluating fitness; whereas the only way to evaluate an applicant was his past behavior. The court held:

> Such distinctions among those members of the class of ex-offenders are irrational,regardless of the importance of the public safety considerations underlying the statute or the relevance of prior to fitness.  In fact, allowing existing licensees who commit felonies to continue to be eligible for licensing undercuts the reasonableness of the basis for the classification, which is that the felony is per se likely to create a serious risk which cannot be sufficiently evaluated to protect the public through individualized hearings.  An applicant for a license who has committed one of the described felonies and a licensee who has done the same are similarly situated,and no justification exists for **automatically** disqualifying one and not the other.  Accordingly, insofar as ...[the regulations]... discriminate irrationally among the class of ex-offenders, they violate the equal protection clause of the fourteenth amendment. (Emphasis supplied.)

The same reasoning applies in this case. Alabama's legitimate reason for this regulation is undercut by the fact that at the time the plaintiff applied to be placed on the list, drivers who had

explain the circumstances of the misdemeanor conviction on which the denial is based, even if the conviction is slightly less than ten years old. However, as noted, supra, the court does not reach the issue of "irrebuttable presumption" of dishonesty or untrustworthiness, either of which is a legitimate reason to bar ones name form the list. Nor does the court reach the issue of whether the licensing or appeal process provided for in the 1992 regulations comports with due process of law under either the federal or state standards. <u>See, e.g., Alabama Administrative Procedure Act</u>, Ala.Code §41-22-1 <u>et seq</u> (1975).

DONE this 6th of August, 1993.

_____
UNITED STATES DISTRICT JUDGE